## DICKERSON C. McCLUNG v. PULITZER PUBLISH-ING COMPANY, Appellant.

### In Banc, July 7, 1919.

1. **JURISDICTION: Venue: Corporation: Libel.** The Act of 1909 (Sec. 1755, R. S. 1909), declaring that "suits for libel against corporations shall be brought in the county in which the defendant is located, or in the county in which the plaintiff resides," in so far as it permits a plaintiff to bring a libel suit in the county in which he resides against a corporation whose place of business is in another county and whose newspaper in which the libel is published is printed in such other county, is invalid, in that it denies to said corporation the equal protection of the laws, since, were the libeler an individual, the plaintiff could not maintain his suit in his own county unless the libeler were found and served therein. A resident of Cole County cannot maintain a suit in the circuit court of said county against a corporation whose place of business is in the City of St. Louis and whose newspaper in which the libel is published is printed in said city, unless said corporation waives the lack of jurisdiction. [Per McBAINE, Special Judge; WALKER, FARIS and GRAVES, JJ., concurring; BOND, C. J., and BLAIR and WILLIAMS, JJ., dissenting; WOODSON, J., not sitting.]

2. **EQUAL PROTECTION: Corporations.** Corporations come within that provision of the Fourteenth Amendment declaring that no State shall deny to any person within its jurisdiction the equal protection of the laws. Therefore the laws must extend to them the same protection they extend to individuals.

3. ———: **Corporations and Individuals: Venue: Classification.** It is an advantage to a plaintiff to sue in the county in which he lives, and to a defendant to defend in the county of his residence; and a statute which permits a plaintiff in a libel suit to sue a non-resident corporation libeler in his own county, and denies to him the right to sue a non-resident individual libeler in the same county, makes an unreasonable classification against the corporation, and is invalid, since the classification is not based upon a difference bearing a just and proper relation to the attempted classification.

4. **LIBEL: Public Officials.** Citizens, through newspapers and otherwise, have the right to criticise the official acts of public officers. Rules relating to defamation of an individual in private life do

not apply to the official conduct of a public official. A qualified privilege of free discussion and free criticism of the public acts of public officials is essential to free government.

5. ————: ————: **Matter For Court.** It is the duty and province of the court to determine whether the spoken or written published matter complained of relates to the public acts of the plaintiff and is of public interest, and to further determine whether the comments upon the facts and the criticism are qualifiedly privileged; and if the alleged libelous matter pertains solely to plaintiff's public conduct as a public official, and all the substantial facts are admitted to be true or established without substantial controversy, and the comments upon them are qualifiedly privileged, the court should not submit the case to the jury.

6. ————: **Inference.** A newspaper has a right to draw inferences from established facts as to the motives of a public official, whether such inferences are right or wrong, reasonable or unreasonable, provided they are made in good faith.

7. ————: **Qualified Privilege: Malice.** A defendant has a qualified privilege to criticise and censure the public acts of a public official, but the privilege does not exist where defendant is actuated by malice, by which is meant the presence of an improper motive.

8 ————: **Malice: Proof: Other Articles.** The burden of establishing malice or improper motive is upon the plaintiff in a libel suit; and is not established by the introduction of other articles which only show that plaintiff's conduct as a public official was being discussed and censured for the purpose of bringing about needed reforms, as defendant viewed the matter, in the management of a public institution.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED.

*Judson, Green & Henry* for appellant.

(1) Neither the Circuit Court of Cole County nor the Circuit Court of Callaway County ever had any jurisdiction over this defendant, because Sec. 1755, R. S. 1909, authorizing plaintiffs to sue in the county of their residence in actions for libel against corporate publishers, although the defendant resides in and must be served in another county, is unconstitutional, being

special or class legislation. It is exactly the same kind of statute as old Section 1754, which has been held unconstitutional by this court as applied to corporate publishers of libels. It is also unconstitutional because it denies to such corporations the equal protection of the law. Houston v. Pulitzer Pub. Co., 249 Mo. 337, 339; Julian v. Kansas City Star, 209 Mo. 35; Davidson v. Pulitzer Pub. Co., 178 S. W. 68. (a) This statute is unconstitutional because it unreasonably discriminates between corporate publishers of libels and all other corporations. Cases supra. (b) The statute is also unconstitutional as arbitrarily discriminating between corporations and individuals. See Cases supra; Santa Clara County v. Southern Pacific Ry., 118 U. S. 118; Gulf Ry. Co. v. Ellis, 165 U. S. 150; Barbiere v. Connolly, 113 U. S. 558; State v. Loomis, 115 Mo. 307; Wyatt v. Ashbrook, 154 Mo. 375; Russell v. Croy, 164 Mo. 97; State ex rel. v. Ry. Co., 195 Mo. 228. (c) There is no reasonable basis of classification warranting discrimination between individual and corporate publishers. State ex rel. Wyatt v. Ashbrook, 154 Mo. 375. (2) The defendant's demurrer to the evidence at the close of the case should have been sustained and the judgment should therefore be reversed. The articles complained of were both editorial discussions of a matter of the highest public interest and importance and every statement of fact in the first article was shown to be true by undisputed evidence. (a) The expression of an opinion in a general public discussion of the management of the penitentiary is not libelous or defamatory, but it is privileged in law, under the facts in evidence. Walsh v. Pulitzer Pub. Co., 250 Mo. 142; Cook v. Pulitzer Pub. Co., 241 Mo. 326; Tilles v. Pulitzer Pub. Co., 241 Mo. 609; Gandia v. Petttingill, 222 U. S. 452, 457; Branch v. Knapp & Co., 222 Mo. 532; Diener v. Star-Chronicle, 230 Mo. 613; Diener v. Star-Chronicle, 232 Mo. 416; Davis v. Shepstone, 11 App. Cas. 190; Gott v. Pulsifer, 122 Mass. 235; Duffy v. Evening Post, 96 N. Y. Supp. 629. (b) Comment and criticism includes the right to

draw incorrect inferences and to state unjust opinions. Cook v. Pulitzer Pub. Co., 241 Mo. 326; Diener v. Star-Chronicle, 232 Mo. 417; Howarth v. Barlow, 113 App. Div. (N. Y.) 258; United States v Smith, 173 Fed. 240. (c) That it is for the court, and not for the jury, to construe the language complained of in an action for libel where the facts are not in dispute, and to determine whether it is libelous, has been held in many recent decisions of our Supreme Court. Cook v. Pulitzer Pub. Co., 241 Mo. 326; Walsh v. Pulitzer Pub. Co., 250 Mo. 142; Diener v. Star-Chronicle, 230 Mo. 613; Diener v. Star-Chronicle, 232 Mo. 416; Branch v. Knapp & Co., 222 Mo. 532. (d) That a newspaper has the right to make publication concerning and to comment upon matters of public interest and that the doctrine of privilege under the law by libel permits an honest censorship by the newspaper press over the conduct of officials in the management and conduct of public affairs is well established. Cook v. Publishing Company, 241 Mo. 354, 357; O'Rourke v. Lewiston Daily Sun Pub. Co., 89 Me. 310; Branch v. Knapp & Company, 222 Mo. 603; Coleman v. MacLennan, 78 Kas. 711; Gandia v. Pettingill, 222 U. S. 457; Cowan v. Fairbrother, 118 N. C. 418; Bearce v. Bass, 88 Me. 521; Schull v. Hopkins, 26 S. D. 21. (e) The record fails to establish that the comment contained in the publication was inspired by malice, or that the facts upon which it is based are false.

*Ed E. Yates, A. T. Dumm, W. C. Irwin* and *J. R. Baker* for respondent.

(1) "Courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed in their judgment, beyond reasonable doubt." State ex rel. v. Fort, 210 Mo. 526. (2) This venue section of our statute has never been directly before the Supreme

Court. It has been referred to in cases where its validity was not involved, and it is fair to remember that all that has been said with reference to the statute is in its favor. Cook v. Globe Print. Co., 227 Mo. 522. (3) The Legislature in enacting this statute, Sec. 1755, R. S. 1909, doubtless had in mind the inequalities affecting plaintiff, as well as a corporate defendant, in the matter of libels published. If it was unfair to drag a corporate defendant to any county of plaintiff's choosing, by the same token it is equally unfair to require a citizen of the interior of the State to go to the habitat of a newspaper for his redress. And because the great newspapers, those of largest circulation and influence and therefore possessing the greatest power to injure, are published in the cities and by corporations, the Legislature very properly and without doing violence to law, placed them in a single classification. The doctrine announced by VALLIANT, J., in the minority opinion in the Julian Case, 209 Mo. 67, that "there is a difference between a corporation and an individual. The corporation is an artificial being possessing only the rights that the statute has granted and bearing the burdens that its charter imposes," etc., is the law of the land, as announced repeatedly by the United States Supreme Court, as shown by the cases cited. (4) That powers may be conferred upon or withheld from a corporation without doing violence to constitutional mandate is sound, wholesome doctrine. Beva College v. Ky., 211 U. S. 45; Hammond Pack. Co. v. Arkansas, 212 U. S. 322; Jenkins v. Cor. Mut., 171 Mo. 384. (5) The fact of the great power of the corporate libeler for harm, since such possess practically all of the great agencies for this work, suggests the right of classification; and since a corporation can only exist by grace, it has no legal right to complain that it cannot do the things or enjoy the rights that an individual may any more than an individual may complain under the Constitution that he cannot do the things or enjoy the privileges and immunities which may lawfully be done or enjoyed by a corporation. State ex rel. v. Fort, 210

Mo. 512. (6) Suits against insurance companies under the general corporation laws of this State have been brought in the county where the cause of action accrued, practically ever since grass grew and water ran in Missouri; and this without reference to the local residence of the company. Individual insurers cannot be so sued unless residents of the county where the cause of action accrued. No good lawyer in wildest fancy has ever thought that this corporation law furnishes a constitutional objection or that such might be successfully urged by an insurance company to an action against it where it did not reside and had no agent. We have a law in Missouri which permits insurance companies even after they have withdrawn from the State and ceased to do business therein, to be sued by taking services on the insurance superintendent on outstanding policies. Of course, you could not do this in the case of an individual insurer (and there are many such in these days of individual underwriters), but who would stand up and affirm that the law referred to is unconstitutional as being discriminatory? It will be a wise man, indeed, who can maintain such a position. Such laws are valid for two reasons: (a) Corporations being children of the law are *ipso facto* subject to such burdens as the law-making power may from time to time impose. He who accepts favors must expect to bear burdens. (b) The possession of a peculiar power to do mischief possessed by a given agency, suggests of itself, the right to legislate with reference to that particular agency. To illustrate: We have special legislation against railways for setting out fire, yet railway engines are not the only offenders along this line. The traction engine owned by an individual may do it, and frequently does, yet we have special laws and special rules of evidence created by statute affecting the railway alone. Why? Because the railway has common carrier rights and in addition thereto, great power for harm in the matter suggested; so when the corporate newspaper by legislative grant becomes a common carrier of news for hire,

it is proper classification and violative of no constitutional provision to say to it: You may not libel the citizen and drag him to your home, the seat of your greatest influence and power for redress, but if he so chooses he may make his vindication in the place where he resides and where the humiliation and injury suffered is likely to be greatest. Hatcher v. So. Ry. Co., 68 So. 55; Allen v. Smith, 95 N. E. 831. (6) "Legislation which merely affects the remedy for or against a corporation is not unconstitutional if it does not take away all remedy, or so reduce it as to have practically that effect." 1 Clark & Marshall on Private Corporations, pp, 679, 695, and p. 678, sec. 268. If a statute assailed under the equal protection provision of the Federal and State constitutions affects merely the venue of the cause, the place where it may be brought or ultimately tried, and the laws administered in each of the courts are the same, no court in Christendom has up to this hour held that such a statute is bad. The United States Supreme Court has fully settled this proposition, and it cannot be ruled in appellant's favor in this case without striking down the unanimous decision of that court in Cincinnati Street Railway Co. v. Snell, 193 U. S. 29, 48 L. Ed. 604. See, also, 12 Corpus Juris, p. 1185; Cook v. Ray Mfg. Co., 159 Cal. 694, 115 Pac. 318; Central Ga. Tar Co. v. Stubbs, 141 Ga. 172. See, also, Houston's Case, 249 Mo. l. c. 338. (7) Concluding this branch of the case, we make the following observations, some of which we get directly from the cases cited, some of which are the result of our own reflections: (a) No case can be found where a statute similar to this solely affecting the venue of actions has been held bad under the Fourteenth Amendment or under our State Constitution. (b) To require a citizen to go to the habitat of the powerful influential corporation for his redress when libeled is to create for him a worse condition than that which excited sympathy when it was held that corporations might be sued for libel in any county where same was published. If that right which has existed under the common law

ever since there were libelers gave the plaintiff an unfair advantage in the choice of venue, does not the same objection obtain when the plaintiff can only have his action by bearding the lion in his den? (c) To hold that this statute is unconstitutional is virtually to strike down the provisions of Article 2, Section 10, Missouri Constitution, for that, *inter alia,* it guarantees an open court and a certain remedy to every injury to person, property or character. Mining & Mill. Co. v. Fire Ins. Co., 267 Mo. 583. Certainly, it has never been claimed that because an individual could not be sued where and under the same circumstances these enumerated corporations may be sued, the venue and process statutes affecting them were repugnant to constitutional provisions. (d) If reason for classification between corporations and individuals were at all needed, we think sufficient reason for the privilege of so doing arises from these considerations: Corporations exist by grace. They are the creatures of legislative generosity. They may do many things that the individual with his physical, financial and legal limitations may not do. Individual publishers of newspapers as well as other individual libelers are liable to a plaintiff to the full extent of their property holdings. Corporation libelers have no individual liability or responsibility of any kind. (e) Corporation libelers naturally fall into a class, since with perhaps two exceptions in the entire United States they own the great newspapers with their attendant power and influence where they are printed, and with an unlimited power for injury to those living remote from their seats. (f) The right to sue such newspapers at the place of residence of the one to whom wrong is done should and does exist, because there an unchallenged charge most nearly affects him. (g) Venue laws in both civil and criminal actions are not uniform, were not intended to be uniform and cannot in the very nature of things be made uniform. (8) It is claimed that defendant's demurrers at the close of the whole case should have been sustained, for that the article sued on contained mere state-

ments of opinion, fair comment and criticism. Counsel seem to try to make a distinction in this regard between the two articles. There is none. The facts upon which these alleged opinions and comment and criticism are based are not given. One may not withhold facts and yet so denounce another by language descriptive of his conduct in such a way as to hold him up to public scorn, hatred, contempt or in a way to deprive him of the benefits of public or private confidence, or social intercourse, without *ipso facto* making himself a libeler under our law. Price v. Whiteley, 50 Mo. 441. In that case the language sued on was mere denunciation, to-wit: ''I found an imp of the devil in the shape of Jim Price sitting upon the mayor's seat.'' If to charge one with being a coward or an imp of the devil is libelous which portray moral qualities, how much more so to say of one as warden of a penal institution that he was guilty of mediaeval barbarities toward those under his charge! To those familiar with the world's history it means anything conceivable in the way of torture practiced by the barbarian and the savage. In the first article the charges are rung again and again upon the barbarous character of the punishment inflicted by Warden Mc-Clung. The case last cited has been followed again and again. The conception of counsel that one cannot be libeled by an expression of opinion as to his moral qualities or conduct is not ever ''archaic,'' for it never has been the law in any jurisdiction and could not by any possibility be the law under such a statute as ours. Ferguson v. Chronicle, 72 Mo. App. 465; Mauget v. O'Neill, 51 Mo. App. 35; Farley v. Chronicle, 113 Mo. App. 216; 25 Cyc. 253, note 32. To say of one that he is a ''frozen snake'' is libelous *per se*. Hoare v. Silverlock, 12 Q. B. 624. Or a skunk: Pledger v. State, 77 Georgia, 242. To say of a writer that he is a ''presumptuous literary freak'' is libelous *per se*. Triggs v. Sun, 179 N. Y. 144. ''Whenever the libelous intent or seeming libelous intent appears though dimly and vaguely, as 'through a glass darkly,' the question be-

comes one for the jury to say whether the meaning was harmless or defamatory.'' McGinnis v. Geo. Knapp & Co., 109 Mo. 150; Link v. Hamlin, 193 S. W. 593. Comment must be fair and without malice. This is for the jury. Cook v. Pub. Co., 241 Mo. 357; Cornelius v. Cornelius, 233 Mo. 31. To publish a libelous communication on the authority of another is to adopt it as one's own, even where the authority is given. 25 Cyc. 363. (9) That the publications sued on were inspired by malice fully appears from the fact that defendant knew them to be false or had the opportunity to learn their falsity and failed to ascertain the truth. Recklessness is equivalent to malice. Minter v. Bradstreet, 174 Mo. 444; Brown v. Kripp, 213 Mo. 695. Nor does either article with any degree of fairness characterize the punishments that obtained in the Missouri prison. When the publisher goes beyond the limits of fair criticism or comment the region of libel has been reached, and ''whether those limits have been transcended is for the jury.'' 18 Am. & Eng. Enc. Law (2 Ed.), pp. 1021-2; Trigg v. Ptg. Co., 189 N. Y. 154; Fay v. Harrington, 176 Mass. 270. (10) Appellant reiterates the statemens in its brief that Willis. was kept in the rings fourteen hours each day. This is not only untrue, but at the time of the publication of this statement defendant knew or could easily have known that it was untrue. When the truth is pleaded the evidence to sustain it must be as broad as the charge and go to the very charge. Nelson v. Musgrave, 10 Mo. 648; Whittlesey's Practice, p. 228; Odgers on L. & S. sec. 170; Townshend on L. & S. sec. 212; Starkie on L. & S. p. 342; Newell on L. & S. p. 662; Pratt v. Pioneer Press, 30 Minn. 44; Self v. Gardner, 15 Mo. 480; Faler v. Delavan, 20 Wend. 57; Thompson v. Pioneer Press, 37 Minn. 285; Mull v. McKnight, 67 Ind. 535.

McBAINE, Special Judge.—This is an action for libel, in which the plaintiff recovered judgment and the defendant appealed to this court.

The suit was instituted in the Circuit Court of Cole County, where the plaintiff resided, and summons was served upon the defendant in the City of St. Louis.

At the return term the defendant appealed specially and filed a plea to the jurisdiction of the Circuit Court of Cole County. The plea to the jurisdiction was, in substance, that defendant was a Missouri corporation engaged in publishing a newspaper, called the St. Louis Post-Dispatch, in the City of St. Louis, where its principal office is located and that at all times mentioned in plaintiff's petition it had no office or agent in Cole County. It was alleged that the service of summons was made upon defendant by the Clerk of the Circuit Court of Cole County sending the petition and summons to the Sheriff of the City of St. Louis and that no other service was had; and, that defendant had made no voluntary appearance in the Circuit Court of Cole County. The plea alleged that the paper containing the alleged libel was first published in the City of St. Louis.

The defendant then alleged, in its plea to the jurisdiction, that if the statutes of Missouri are construed as warranting service in this manner and compelling defendant to appear in the Circuit Court of Cole County when individual defendants in libel suits can only be sued in counties of their residence, then the statutes violate the Constitutions of Missouri and of the United States in that they deny to defendant the equal protection of the laws.

The plea to the jurisdiction was overruled. The defendant then demurred to the petition on the ground that the petition on its face showed that the court had no jurisdiction. The demurrer was overruled. A change of venue was then taken by defendant to the Circuit Court of Callaway County, where the case was tried by the court and a jury. A verdict was rendered in favor of plaintiff in the sum of $20,000, but before defendant's motion for a new trial was passed upon plaintiff remitted

$13,000 and judgment was thereupon entered against defendant in the sum of $7000.

As was stated, this is an action for libel. The petition is in two counts. In the first count the plaintiff alleged that he was the Warden of the State Penitentiary and "that by the provisions of the laws of this State, the plaintiff as such warden at all times hereinafter mentioned had and exercised the general control and supervision over the government, discipline and police regulations of and appertaining to the said penitentiary." He alleged that the defendant newspaper published an article charging him with barbarous and archaic treatment of prisoners in the penitentiary.

In the second count of the petition the same allegation is made as to the plaintiff's conduct. It was then alleged that the defendant published another article defamatory of the plaintiff of the same general nature. It was alleged that the second article was a purported letter from a convict in the penitentiary. The letter is set forth in full in the petition. The convict, in the letter, complained of the treatment of prisoners in the penitentiary, and stated, in substance, that many prisoners were severely whipped with a leather whip on their bare backs. The letter also stated that prisoners were punished by compelling them to stand on their feet, flat on the stone floor, with their arms extended above their heads and their wrists chained by hand-cuffs to a ring fastened in the wall of a prison cell. It was stated that they stand in that position from 6:30 a. m. to three p. m., and again from three p. m. to nine p. m.; that they receive one slice of bread at six o'clock in the morning, and another one at three o'clock in the afternoon; that they were given water, but no other food, and that they were compelled to sleep at night, without bedding or cover, in the cell upon a board upon the cell floor. This treatment of prisoners was criticized as horrible, ignorant, brutal and unjust, and it was said that many prisoners because of such treatment, left the penitentiary "with murder in their hearts, determined

to make society pay them what it has allowed them, through its representatives, unjustly to suffer.'' The convict called upon the defendant paper to discuss the matter in the interest of society and stated: ''I promise you you will uncover brutality, ignorance and vice such as would make the story of the Spanish Inquisition read like a nursery rhyme.''

The letter also stated that one Steve Willis was put in the rings and kept there a great length of time until he made a confession to the officials where he had gotten some whisky found on his person. The convict stated that a confession ''rung from a man under torture'' has no value in a court of law and asked why such a confession should be given value in the penitentiary. It was alleged that this letter from the convict was published with comment by the defendant. The comment was that the letter was published as a statement of an intelligent man for what it was worth, and that the defendant stated ''we ask Warden McClung and the members of the Board of Prison Inspectors if these charges are ·true. We ask Governor Major if they are true. We ask a through investigation to determine their truth or falsity.''

The answer of defendant alleged that the penitentiary at Jefferson City was a public institution of the State, and that plaintiff was its warden; that defendant published a newspaper in the City of St. Louis, known as the St. Louis Post-Dispatch and that it wrote the articles mentioned in the petition of the plaintiff as Warden of the Penitentiary. The defendant alleged that the penitentiary had in it 2500 prisoners, and that the management, government and discipline thereof were matters of the highest public interest and concern to the people of Missouri, and that defendant and every citizen of the State had the right to discuss, criticize and comment upon the conduct and management of the penitentiary and its various officials. It was alleged that defendant had the right to criticize the plaintiff

warden if in its opinion he deserved criticism or censure.

The answer alleged that before the publication of the alleged libels complained of a prisoner named Steve Willis had been punished for refusing to tell the prison officials where he obtained a bottle of whisky which had been found in his possession; that Willis was placed in a cell in solitary confinement, hand-cuffed, and his hands chained to an iron ring, fastened to the wall, the ring being placed so that his hands and arms were raised several inches above his head; that he was compelled to stand in this posture for twenty consecutive days, for 14½ hours a day; that he was not allowed to leave his cell at any time and only had one slice of bread at six o'clock in the morning and another at three o'clock in the afternoon, and had nothing else to eat during the twenty days, and that at night he was compelled to sleep upon a bare board laid upon the concrete floor of the cell without bedding or covering of any kind. It was alleged that at the end of twenty days Willis was unable to bear up longer, and that he made a false confession to the prison officials that he obtained his whisky from another prisoner named Wright; and that thereupon the prison officials released Willis and seized Wright and hand-cuffed and chained him, and that in order to obtain a release Wright confessed, and thereupon Wright was released. The answer also alleged that prior to the publication of the articles complained of, plaintiff and his deputies had caused various inmates of the penitentiary to be stripped of their clothing and their hands tied, and whipped upon there bare backs with a heavy leather strap. It was alleged that these matters were commonly known and discussed in the public press at the time both articles in question were published.

It is alleged that these articles were published for the purpose of bringing about reform in the management and discipline of the penitentiary, and that the statements of facts in the articles were substantially

true and all matters of inference, opinion or comment in the articles were based upon the facts and were made in good faith for the purpose of bringing about reform, and that they were not libelous of plaintiff.

The reply denied the new matter in the answer.

At the trial, the evidence showed that Steve Willis was put in the rings for 20 or 21 days; that he was given a slice of bread at six o'clock in the morning and was put in the rings at 6:30 in the morning, and taken down at three in the afternoon and given another slice of bread, and was put back in the rings and kept there until nine o'clock at night, and then compelled to sleep on a board laid upon the concrete floor of the cell, without covering or bedding.

On cross-examination plaintiff stated that such was the discipline inflicted upon Steve Willis. He stated that he thought Willis was let down at three o'clock and not put back again. But he also said: "I do not know at what time he was put up and let down." He stated that he kept men in the rings 30 or 40 days. He stated that he regarded this form of punishment as proper. He said that Willis was punished for having a bottle of whisky on his person, and "that he was not strung up" to compel him to state where he had gotten his whisky. He said, though, that Willis was let down shortly after he made his confession that Wright had given him the whisky, and that Willis was let down because the officials though he had been punished enough.

The testimony of the night guard and the day guard in the punishment hall at the time Willis was strung up in the rings was that Willis was put in the rings at 6:30 in the morning, taken down at three, put back at 3:30 and kept there until nine o'clock. Willis himself also testified to the same effect.

The evidence showed that four or five prisoners were whipped with a leather whip on their bare backs during the time the plaintiff was Warden of the penitentiary. This evidence was given by the plaintiff, on

cross-examination, and by his witness, the Deputy Warden, whom the plaintiff said did the whipping.

It was also given by two former members of the Board of Prison Inspectors who had witnessed the whipping or two negroes who were whipped for fighting. They stated that these prisoners were whipped with a strap that was two to four feet in length, attached to a wooden handle, and that the whipping was done by the Deputy Warden, and that the prisoners cried out that they would quit fighting if the Deputy Warden would quit whipping them. It was stated that when they were whipped they had their hands fastened to a ring in the wall, and that their clothing was stripped off their backs, and that they were hit five or six licks on their bare backs.

I. First, is the Missouri statute, Section 1755, Revised Statutes 1909, authorizing the institution of this suit in the Circuit Court of Cole county constitutional? That section reads as follows:

Venue:
Unconstitutional
Statute.

"Sec. 1755. Suits for libel against corporations shall be brought in the county in which the defendant is located, or in the county in which the plaintiff resides; and when suit is instituted in the county in which the plaintiffs resides, summons may be issued to and served by the sheriff of the county in which the defendant is located." , [Laws 1909, p. 347.]

It applies only to suits for libel against corporations.

Section 1751, Revised Statutes 1909, the statute covering the question of the venue in libel suits, and many other suits, against individuals, provides that suit shall be brought in the county where the defendant resides, or where the plaintiff resides and the defendant may be found.

Section 1754, Revised Statutes 1909, relating to suits against corporations, provides that the suit shall be brought in any county where the cause of action ac-

crues, or in any county where the corporation usually keeps an office or agent for the transaction of their usual and customary business.

It is earnestly insisted by appellant that Section 1755, Revised Statutes 1909, denies to corporations charged with libel the equal protection of the law, and that it has been so decided by the prior judgments of this court. For respondent it is also strenuously argued that this statute does not deny to defendant the equal protection of the laws of Missouri, and that it has not been so decided by the prior judgments of this court. The question has been discussed learnedly by counsel for both parties, both in the printed briefs and in the oral arguments. An approach to the solution of the question will be made by making a short reference to the prior decisions of this court on this question.

Julian v. Kansas City Star Co., 209 Mo. 35, decided by the court, In Banc, is the starting point. There an action by the plaintiff was brought against the defendant in the Circuit Court of Platte County. The plaintiff lived in Jackson County, and the defendant corporation first published the alleged libel in Jackson County, where it had its office and principal place of business. A majority of this court held that the Circuit Court of Platte County had jurisdiction. GRAVES and LAMM, JJ., dissented on the ground that the court had no jurisdiction, and that if the Legislature intended to confer jurisdiction upon the Circuit Court of Platte County in a case of this nature the act of the Legislature was void and in violation of the State and Federal constitutions, in that defendant was denied the equal protection of the laws of Missouri. The basis of the dissenting opinion was that the construction given the Missouri statutes by the majority of the court made a difference between corporate libelers and individual libelers. It was pointed out that a corporation is a citizen within the meaning of the 14th Amendment to the Federal Constitution which provides that no state "shall deny to any person within its jurisdiction the

equal protection of the laws." In Covington and Lexington Turnpike Co. v. Sandford, 164 U. S. 1. c. 592, it was said that no distinction existed between corporate libelers and individual libelers, and also that no distinction existed between two individual plaintiffs, for example, one of whom had been libeled by a corporation publishing a newspaper, and the other by an individual publishing a newspaper. It was also said that such legislation was in violation of Section 10, Article 2, of the Constitution of Missouri, guaranteeing that "justice should be administered without sale, denial or delay." It was said that disadvantages were placed upon corporations charged with libel, and that there was no difference in fact between an individual charged with libel and a corporation. The majority opinion, however, was followed in several succeeding cases. [See Tilles v. Pulitzer Publishing Co., 241 Mo. 609.]

But in Houston v. Pulitzer Publishing Co., 249 Mo. 332, the rule laid down in the dissenting opinion in Julian v. Kansas City Star Company, supra, was recognized as the correct rule, and applied in that case by Court In Banc. The court held that the circuit court of Macon County had no jurisdiction of a libel suit instituted by a citizen of Cass County against the defendant corporation, whose domicile was in the City of St. Louis. Julian v. Kansas City Star Company was overruled in part. It was said that if old Section 997, Revised Statutes 1899, was to be given the construction placed upon it "by the majority in the Julian case," then the statute violates both the State and Federal Constitution. GRAVES, J., wrote the opinion for the majority of the court. WOODSON and BOND, JJ., dissented.

Jones v. Pulitzer Publishing Co., 256 Mo. 57, Division 2, was decided upon the express authority of Houston v. Pulitzer Publishing Company, 249 Mo. 332, and held that the trial court got no jurisdiction of the libel suit in question, as it was brought "in another county than that in which the plaintiff resided, or the

defendant, if a newspaper, first published the libel or had an office or agent."

Again, in Davidson v. Pulitzer Publishing Co., 178 S. W. 68, Division One of this court held, upon the authority of the Houston case and the Jones case, supra, that the Circuit Court of Jackson County did not get jurisdiction of a suit brought by plaintiff, a resident of Jackson County, against this defendant, a Missouri corporation, with its office and place of business in the City of St. Louis. The opinion was written by WOODSON, J. All concurred, BOND, J., "for the reason that Court in Banc has decided the question."

So then we conclude that since the decision in Houston v. Pulitzer Publishing Co., 249 Mo. 332, decided April 8, 1913, this court has been of the opinion that the Legislature has not the authority, under the State and Federal Constitutions, to provide that the venue in libel suits shall be that the individual charged with libel may only be sued in the county where he resides, or where the plaintiff resides if the individual is there found, but, that in the case of a corporation charged with libel the corporate defendant may be sued in a county in this State, where neither the action accrued nor the corporation has its domicile or agent for the transaction of business, and that the Legislature may not provide that a citizen of the State, who is plaintiff in a libel suit, can sue a corporate defendant charged with libel in the county where the citizen resides while a citizen, as plaintiff, who charges an individual defendant with committing a libel, cannot sue the defendant in the county in which the plaintiff resides, unless the individual defendant shall be found in the county where the plaintiff resides.

We believe that the rule laid down in Houston v. Pulitzer Publishing Co., 249 Mo. 332, is not only the established law of this State, but that it is also sound in legal principle. For a lucid and forceful discussion of the principle we refer to the dissenting opinion in Julian v. Kansas City Star Company, 209 Mo. l. c. 97. As

was stated by Judge GRAVES in that case the Supreme
Court of the United States has definitely settled that
corporations are within the protection of Section 1 of the
14th Amendment to the Constitution of the United
States, providing that no State shall "deny to any per-
son within its jurisdiction the equal protection of the
laws." [Santa Clara County v. Southern Pac. Railway
Co., 118 U. S. 394; Gulf etc. Railway Co. v. Ellis, 165
U. S 150.] In the latter case Mr. Justice BREWER said:
"The rights and securities guaranteed to persons by that
instrument cannot be disregarded in respect to these
artfiical entities called corporations any more than
they can be in respect to the individuals who are the
equitable owners of the property belonging to such cor-
porations. A State has no more power to deny to cor-
porations the equal protection of the law than it has
to individual citizens."

The Supreme Court of the United States therefore
laid down the rule that the property, and other rights,
of the citizens were protected by this amendment when
several citizens have associated themselves together
under the sanction and authority of the State, for the
purpose of transacting business and have brought into
existence a legal entity called a corporation. These
entities have received legal sanction from a very early
period in the common law, and have been and are now
receiving legal sanction in all of the States of the Union.

No extended discussion of the authorities need be
made holding invalid many state statutes which deny
to corporations and individuals the equal protection of
the laws. Such a discussion would serve no useful pur-
pose at this late date. Nowhere is the matter more
clearly discussed than in Gulf Railroad Co. v. Ellis, 165
U. S. 150, in the opinion by Mr. Justice BREWER. In
that case that learned jurist specifically approved a
decision of this court, State v. Loomis, 115 Mo. 307,
where the question is also very ably considered. In
the first case Mr. Justice BREWER said, at page 155:

"As was well said by BLACK, J., in State v. Loomis, 115 Mo. 307, 314, 21 L. R. A. 789, in which a statute making it a misdemeanor for any corporation engaged in manufacturing or mining to issue in payment of the wages of its employees any order, check, etc., payable otherwise than in lawful money of the United States, unless negotiable and redeemable at its face value in cash or in goods and supplies at the option of the holder at the store or other place of business of the corporation, was held class legislation and void: 'Classification for legislative purposes must have some reasonable basis upon which to stand. It must be evident that differences which would serve for a classification for some purposes furnish no reason whatever for a classification for legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations. Thus, the Legislature may fix the age at which persons shall be deemed competent to contract for themselves, but no one will claim that competency to contract can be made to depend upon statute or color of the hair. Such a classification for such a purpose would be arbitrary and a piece of legislative despotism, and, therefore not the laws of the land.' "

Concluding the opinion, at page 165, Mr. Justice BREWER said: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection. Tested by these principles the statute in controversy cannot be sustained. The judgment of the Supreme Court of Texas is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion." See also Cotting v. K. C. Stock Yards Co., 183 U. S. 79.

And as stated by a learned writer discussing the "equality" clause of the Federal Constitution (Guthrie, The Fourteenth Amendment to the Constitution of the United States, p. 110): "The provision, if properly construed, assures to every person within the jurisdiction of any State, whether he be rich or poor, humble or haughty, citizen or alien, the protection of equal laws, applicable to all alike and impartially administered without favor or discrimination. Thus what was the spirit became the written rule of American state governments; and equality, infused through the mass of our rights and duties, now pervades, unites, invigorates, the whole system."

Learned counsel for respondent place great reliance upon Cincinnati Street Railway Co. v. Snell, 193 U. S. 30. They argued that under the rule laid down by that case, Section 1755, Revised Statutes 1909, is constitutional. In that case the Supreme Court of the United States held a statute of Ohio not in violation of the equality clause of the Fourteenth Amendment. The Ohio statute read as follows: "When a corporation having more than fifty stockholders is a party in action pending in a county in which the corporation keeps its principal office, or transacts its principal business, if the opposite party make affidavit that he cannot, as he believes, have a fair and impartial trial in that county, and his application is sustained by the several affidavits of five credible persons residing in such county, the court shall change the venue to the adjoining county most convenient for both parties."

A personal injury suit was brought against the defendant corporation in an Ohio court and the plaintiff under the statute took a change of venue. The trial resulted in a verdict in favor of plaintiff. It was affirmed by the Supreme Court of Ohio. A writ of error was sued out to the Supreme Court of Ohio by the defendant railroad company. The Supreme Court of the United States held the statute valid and not in violation of the equality clause of the Fourteenth Amendment. The

opinion holds that classification made as to corporations having fifty stockholders or more was not unreasonable, and that it was in the power of the Ohio Legislature to provide that a plaintiff in a suit against a corporation having fifty stockholders or more, which was pending *in the county where the corporation keeps its principal office or transacts its principal business,* may change the venue to some other county, if he shall make an affidavit that he cannot have a fair trial in the county where the suit is instituted, and the application shall be supported by the several affidavits of five creditable persons residing in that county. A classification is made then for all corporations having fifty or more stockholders for the purpose of determining the venue of actions against the corporations where the action is pending in a county where the corporation has its principal office or transacts its principal business.

We understand the Supreme Court of the United States to hold that this is a reasonable classification, and that the defendant corporation was not denied the equal protection of the laws of Ohio, though a plaintiff against an individual defendant could not by the same means take a change of venue to another county. The court pointed out that in the forum to which the cause was removed the cause was conducted in the same way under the same rules of pleading and practice and of substantive law that would have been applied in the county where the suit was instituted. We do not understand the opinion to hold that the Legislature of a state may enact a general venue statute providing that suits of the same nature shall be brought in the county of the residence of the defendant where the defendant is an individual, and not at the residence of the plaintiff, but that suits may be brought by the plaintiff in the county of his residence if the defendant is a corporation. The Ohio statute involved no such question. Under the Ohio statute the plaintiff might change the venue to another county from the county where the corporation had its principal office or principal place of business when the

suit was pending in such county when he made affidavit that he could not get a fair trial and supported it by the several affidavits of five creditable persons residing in such county.

Learned counsel for respondent argue that the rule was laid down in Cincinnati Street Railway Co. v. Snell, 193 U. S. 30, that the equality clause of the Federal Constitution has no application to venue statutes. We do not agree with this view. Our substantive and remedial law are inseparable. In fact, we know that the development of the common law was through the remedial side of the law. Lawyers and litigants readily recognize that there is an advantage, if one is plaintiff, to sue in the county where one lives, if the defendant is a resident of another county. To be able to do so is to save time, expense and trouble, and to have the advantage of having jury cases passed upon by one's acquaintances. The subject of local influence is one well known to the law, and there can be no denial that it is a decided practical advantage for a plaintiff to sue a non-resident defendant in the county where the plaintiff resides. The administration of the law is a practical matter, and never without the human element. People are plaintiffs and people are defendants, and money, property and other things of value are the subjects of litigation.

It is also strenuously argued by counsel for respondent that if Section 1755, Revised Statutes 1909, is not valid the personal plaintiff in a libel suit must go to the domicile of the defendant to bring suit if he is libeled, and that in the case of corporations publishing papers of large circulation in the cities of the State this would be very unfair to the personal plaintiff who does not live in one of these large cities where the corporation has its domicile. This we think is an argument more properly addressed to the Legislature of the State than to the courts. It may be conceded that the venue statutes of the State need general revision, but it is not the function of the courts to make that revision. The Legislature

has provided for venue of cases and the courts have not the power to change those statutes if they do not conflict with the State or Federal constitutions. The Legislature of the State has the power to make reasonable classification of people and of corporations in determining the venue of actions, but it has not the power to make an arbitrary or unreasonable classification. The statute in question is not a venue statute governing the venue of all libel suits. It is a statute governing the venue of libel suits against corporations. It is not even a statute governing venue of libel suits against newspaper corporations. No good reason has been given why corporate libelers are any different from individual libelers. No reason has been given why a corporate defendant publishing a daily newspaper in the City of St. Louis with a large circulation should be subject to suit in Cole County, while an individual who publishes a paper with a large circulation in Kansas City is not subject to suit in Cole County. We believe none can be given. We believe the classification of individuals and corporations unreasonable, and not based upon ''any difference which bears a just and proper relation to the attempted classification.'' No doubt more could be said for the reasonableness of a statute which provided that in all libel suits against individuals and corporations alike the action might be brought in the county where the plaintiff resides if there is publication of the libel in that county. But such is not the statute under consideration.

So then following the guide laid down by this court in State ex rel. v. Fort, 210 Mo. l. c. 526, as to the determination of the constitutionality of legislative enactments, viz., ''to ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void unless the nullity and invalidity of the act are placed in their (the court's) judgment beyond reasonable doubt,'' we have concluded that the statute in question violates constitutional mandate.

Research by learned counsel for respondent and appellant brought forth no judgment of the Federal courts nor the courts of our sister States where a statute like the one in question was passed upon. The Supreme Court of California, though, has decided a case which we believe involves a venue statute substantially like the one in question. [See Grocers' Fruit Growing Union v. Kern County Land Co., 150 Cal. 466, 89 Pac. 120.] The action was for specific performance of a contract for the sale of land. The suit was commenced in the City and County of San Francisco. The defendant denied jurisdiction and asked that the case be removed to Kern County. The motion to remove was denied. The land in question was admittedly in Kern County. It was contended that under the California Constitution, Article 6, Section 5, this suit should have been brought in Kern County. The respondent, in that case, insisted that under the Code of California the action was properly brought in the County of San Francisco, the county of the defendant's residence, and properly retained there for trial. Also under Section 16 of Article 12 of the Constitution, it was contended that the corporation had the right to insist upon the case being tried in the county where the corporation was domiciled. In suits against individuals where land was involved the individual defendant had the right to have the suit tried in the county where the land was located. It was argued by the appellant that ''if the proposition be advanced that Section 16 of Article 12 of the Constitution warrants the commencement of the action in the City and County of San Francisco and forbids to defendant its right to change the place of trial, then this clause of our Constitution is violative of the Fourteenth Amendment to the Constitution of the United States, in denying to corporations the right to have an action affecting an interest in real estate tried in the county where the land is situated, while this right is accorded to natural persons.'' In holding that the corporation might remove the suit to the county where the land lay, and that a

construction of the Civil Code, or a provision of the California Constitution which denied corporations that right, would violate the Federal Constitution, the California Court said, at page 474: ''Where the subject-matter of the action, to-wit, land, is made the test for fixing the place of trial of the action, no reason or distinction appears, or can be made appear, why the right should be given to a natural person to have such an action tried in the county where the land is situated, and the same right should be denied to an artificial person, a corporation. . . . No conceivable ground can be suggested why a natural person should have the right of trial of an action involving an interest in land in the county where the land is situated, and the same right should be denied to a corporation. If the situation were reversed the absurdity would be patent. A law which granted to a corporation the right and denied it to a natural person would be held arbitrarily discriminative without a moment's hesitation.''. The California court then concluded that the Civil Code and Section 16 of Article 12 of the Constitution could be and should be so construed as to make no difference in suits against individuals and corporations where the title to land is involved.

It was suggested by the California court as is shown in the above quotation, that an act of a Legislature which granted the right to a corporation to have the suit brought where the land was located and denied the right to a natural person would be held arbitrarily discriminative without hesitation. Apply that thought to the statute under consideration, which deals differently with corporate libelers and individual libelers. Would not the courts without a moment's hesitation declare unconstitutional a statute which provided that in suits against a natural person charged with libel the action might be begun in the county where the plaintiff resided, though the natural person was a non-resident of the county, but as to corporations the suit could not be brought in the county where the plaintiff resided, but

must be brought in the county where the corporate defendant resided? We say a statute would be clearly unconstitutional which discriminated against natural persons and provided that though they were non-residents they might be sued in the county where the plaintiff resided, and required suits against corporations to be brought where the corporate defendant had its residence.

Learned counsel for appellant cite many cases in their brief to support their argument. Time and space prevent a discussion of these authorities. They have been carefully read and considered, but have all been found distinguishable and indecisive of the matter in question. We therefore, conclude: first, that though Section 1755, Revised Statutes 1909, has not actually been passed upon by this court, yet, this court in passing upon Section 997, Revised Statutes 1899, laid down a general principle of constitutional law that condemns the thing attempted by the Legislature in enacting Section 1755; and, second, that under the decisions of this court the Supreme Court of the United States and the courts of last resort of other states, Section 1755, Revised Statutes 1909, is void, in that it contains an inequality and makes a classification bearing no reasonable, just or proper relation to the class made.

II. We are also of the opinion upon the merits of the case that the judgment should have been for the defendant below. In our opinion the case should not have been sent to the jury. There can be no question at this time that the citizens of this State, through newspapers and otherwise, have the right to criticise the official acts of the public officers of this State. The rules relating to defamation where the party alleged to have been defamed is an individual in private life do not apply where the individual alleged to have been libeled is a public official and where the alleged libelous matter is as to the conduct of the individual as a public official, viz., Warden of the State

Merits of
Action.

·Penitentiary.  Perhaps at one time in the English common law one did not have the privilege of freely discussing and criticising the public acts of public officials. Lord HOLT said in 1704: ''If persons should not be called to account for possessing the people with an ill opinion of the government, no government can subsist, for it is very necessary for all governments that the people should have a good opinion of it.'' [The Queen v. Tutchin, 14 How. St. Tr. 1095.]  Such is no longer the English rule.  [Odgers on Libel and Slander (5 Ed.), 193.]  And that this early English case does not represent the rule in this State and in this country generally is a matter of common knowledge to the bench and bar of this country.  Though *imprimatur* does not exist in our law, yet we are definitely committed to the proposition in this country that freedom of discussion and freedom of criticism of the public acts of public officials is essential to free government.  As was well said by LAMM, J., in Diener v. Star-Chronicle Co., 230 Mo. 613, l. c. 630: ''The right of freedom of speech, of fair comment with an honest purpose in matters of public concern, is on the foot of *pro bono publico* and founded on public policy.  Free discussion is the foundation on which free government itself is builded.  That lost, all is lost—the two exist or perish together.  They mean the same thing.  It is only in despotisms that one must speak *sub rosa,* or in whispers with bated breath, around the corner, or in the dark, on a subject touching the common welfare.  It is the brightest jewel in the crown of the law to seek and maintain the golden mean between defamation on one hand and a healthy and robust right of free public discussion on the other.''

As we have stated the authorities in this country are numerous to the effect that there exists a qualified privilege of free comment upon public acts of public officials.  [See Black v. State Co., 93 S. C. 467, 77 S. E. 51; Briggs v. Garrett, 111 Pa. St. 404; Jackson v. Pittsburgh Times, 152 Pa. St. 406; Mulderig v. Wilkes-Barre Times, 215 Pa. St. 470; Burt v. Newspaper Co.,

154 Mass. 238; Gandia v. Pettingill, 222 U. S. 452; Branch v. Knapp & Co., 222 Mo. 580; Diener v. Star-Chronicle Co., 230 Mo. 613; Diener v. Star-Chronicle Co., 232 Mo. 416; Cook v. Pulitzer Pub. Co., 241 Mo. 326; Walsh v. Pulitzer Co., 250 Mo. 142; McClung v. Star-Chronicle Publishing Co., 274 Mo. 194. See, also, Freedom of Public Discussion, 23 Harvard Law Review, p. 413, and exhaustive study by Judge Van Vechten Veeder, a leading American authority on defamation.] No useful purpose would be served by a detailed consideration of these authorities and many others that might have been added.

It is the duty and province of the court to determine whether the matter spoken or written about is a matter of public interest. There can be no doubt but that the matter written about in this case was of great public interest. [Diener v. Chronicle Publishing Co., 230 Mo. 613.] The articles in question did not in anywise relate to the private life of the plaintiff. The only matter under discussion was his conduct as Warden of the State Penitentiary. The evidence showed that the matters of fact stated in the various articles were substantially true.

The matters of fact stated in the convict's letter which is the subject of the action in the second count were shown by the defendant to be substantially true. The evidence as to whether the matters of fact were true or false was adduced, in the main, by the plaintiff and his witnesses. It was supplemented by the evidence of the defendant. There was no attempt, however, upon the part of plaintiff to controvert the evidence of the defendant.

It is also the duty and function of the court to determine whether the comments upon the facts, the criticism, the discussion of the fact, are qualifiedly privileged. This, too, is a question for the courts and not the jury. [See the authorities above.] In our opinion the comments were qualifiedly privileged.

As was well said by KENNISH, P. J., in Cook v. Pulitzer Publishing Co., 241 Mo. 326, where the subject-matter of the alleged defamation is a matter of public interest the plaintiff can only recover where the statements of fact are untrue, or where there is proof of express malice upon the part of the defendant. He stated the rules as follows, l. c. 363: "We think the rule to be deduced from the authorities and in accord with the better reason, is that when a defense of privileged comment on a matter of public interest is presented by the issues, the plaintiff may overcome the privilege pleaded either by proof that the publication was inspired by actual malice, or that the facts published and commented upon were false. If he fail to prove the one or the other a prima facie case will not be made out, and the court, upon the request of the defendant, should give an instruction in the nature of a demurrer to the evidence. These two grounds of attack upon the privilege pleaded are available to the plaintiff in all cases, for in publications commenting upon matters of public interest, facts are always present, stated either expressly or by necessary implication."

And in McClung v. Star-Chronicle Co., 274 Mo. 194, the same rule is announced. That was an action for libel growing out of an article written by the defendant criticizing the plaintiff for his conduct as Warden of the State Penitentiary and for his punishment of Steve Willis. This court there held the article was not actionable, but was qualifiedly privileged criticism of the plaintiff's conduct as a public official.

Nor do we think that the defendant exceeded its qualified privilege of fair comment upon the official conduct of the plaintiff in publishing that part of the convict's letter that stated that Steve Willis was strung up for the purpose of obtaining a confession from him from whom Willis received a bottle of whiskey. The plaintiff warden denied that Willis was strung up to obtain a confession from him, but stated that he was strung up for punishment for having whiskey in his

possession. The defendant paper had the privilege of attributing that motive to the plaintiff. The prisoner Willis was strung up for twenty days, and he was released, so the Warden says, either the same day he made a confession or the next day. The defendant had, undoubtedly, the right to discuss the matter fully and to draw from the facts inference that might reasonably be drawn. This precise question was decided in Cook v. Publishing Co., 241 Mo. 326. In considering that phase of the case KENNISH, P. J., for the court said:

"Under the facts in evidence it was the undoubted right of the defendant, and of all others, to discuss the failure of the bank and the official conduct of plaintiff in connection therewith. Was this right of comment restricted to a restatement of the naked facts, without drawing inferences or expressing opinions thereon, or did the right of comment mean the right to discuss the facts and place thereon the writer's own construction, and to express his opinion of the motives which actuated the officer in his failure to examine and close the bank and protect the public, regardless of whether the opinion was right or wrong, provided it was based upon facts and was not malicious? The two facts that plaintiff and one of the owners of the bank were close political friends, and that this insolvent bank had not been examined for two years, during which time no other bank in the district had escaped examination, fully warranted the inference of that relationship as the cause of the plaintiff's omission to examine this bank. Indeed, the comment suggesting the motive follows as the shadow of the imputation already cast by the facts previously stated. Plaintiff's failure to protect the public by closing the bank may have been due to neglect or inadvertence, or to his lax enforcement of the law as to that bank because of his political friendship for the owners. It will not do to say that the right of comment would permit the defendant to suggest the first and most favorable explanation, but deny to it the right, in good faith to suggest the second, which was fully warranted

under the conceded facts. The right to comment on matters of public interest means the right to express opinions as to the acts of a public officer and to draw inferences as to his motives, whether such opinions or inferences are right or wrong, reasonable or unreasonable, provided they are made in good faith and based upon the truth. [Branch v. Knapp & Co., 222 Mo. 580; United States v. Smith, 173 Fed. 227; Howarth v. Barlow, 113 App. Div. (N. Y.) 510; Townshend on Libel and Slander (4 Ed.), 258.]''

The important fact is that the defendant made no substantial misstatement of fact as to what the public official did. The motive attributed to the plaintiff was not unwarranted in view of the facts. Without doubt it is not libelous, in a case of this sort, where the motive of the public official is difficult to ascertain, to attribute to the public official a motive which is warranted by the facts and circumstances.

Nor was there any proof of express malice in this case. As we have stated defendant had a qualified privilege to criticize and censure the public acts of the plaintiff. This privilege though, as we have stated, is a qualified privilege. It is not an absolute privilege. There are instances of absolute privilege in the law of defamation where one is not liable, though his statements of facts are false and defamatory, but this case is not of that type. The courts in this State, following the weight of authority both in England and in this country, hold that this qualified privilege to criticize and censure the public acts of public officials does not exist where the defendant is actuated by malice. Malice in an ambiguous term. In these cases it means the presence of the improper motive upon the part of the defendant. The matter has been well put by a scholarly English writer as follows, Salmond on Torts, p. 427:

''A statement is said to possess a qualified privilege when, although false and defamatory, it is not actionable without proof of malice. Malice means the presence of an improper motive. A statement is malicious when it

is made for some purpose other than the purpose for which the law confers the privilege of making it. 'If the occasion is privileged, it is so for some reason, and the defendant is only entitled to the protection of the privilege if he uses the occasion for that reason. He is not entitled to the protection if he uses the occasion for some indirect and wrong motive.' ''

The burden of establishing an improper motive upon the part of the defendant was upon the plaintiff in this case. [Cook v. Pulitzer Publishing Co., 241 Mo. 336, l. c. 363; McClung v. Star Chronicle Publishing Co., 274 Mo. 194, l. c. 216; ·Odgers on Libel and Slander (5 Ed.), 225.]

Plaintiff attempted to prove malice by introducing in evidence other articles in the defendant's newspaper relating to the same matter. We have carefully examined these articles and we do not believe that they tend to prove that the defendant was discussing the plaintiff's conduct as a public official for any improper purpose. They only show that plaintiff's conduct as a public official was being discussed and censured to bring about needed reform in the penitentiary management, in this State, as the defendant viewed the matter.

There are many assignments of error by appellant relating to the admission and exclusion of testimony and the giving and refusing and modification of instructions. Many of the assignments present questions that deserve serious consideration. They have not, however, been decided, in view of our holding that the trial court had no jurisdiction and that the plaintiff made out no case of libel under the Constitution and laws of this State.

For the foregoing reasons the judgment below in favor of the plaintiff is reversed. *Walker, Faris* and *Graves, JJ.,* concur; *Bond, C. J., Blair* and *Williams, JJ.,* concur in paragraph 2 and dissent from paragraph 1; *Woodson, J.,* not sitting.