ROBERT E. KLEINSCHMIDT, Appellant, v. WILSON BELL, doing business under the style and firm name of the Independent-Journal, and JOHN EVERSOLE.—No. 38849.—183 S. W. (2d) 87.

Division One, October 9, 1944.

Rehearing Denied, November 6, 1944.

*Frank Dietrich* and *R. E. Kleinschmidt* for appellant.

518

*William G. Marbury* and *Sam Richeson* for respondents.

522

■ CLARK, P. J.—In a suit for libel a verdict for each defendant was returned and from the judgments rendered thereon plaintiff has appealed.

At the general election on November 8, 1938, appellant was the Republican candidate and Edward T. Eversole was the Democratic candidate for judge of the circuit court for the Twenty-first Judicial Circuit. Eversole was then prosecuting attorney of Jefferson county and appellant had previously held that office during the years 1921 and 1922. During the campaign, in speeches and paid articles in newspapers and handbills, appellant charged Eversole with being remiss in his duties as prosecuting attorney in the suppression of gambling which appellant claimed was generally known to be prevalent in Jefferson county. On November 7, 1938, defendant John Eversole, a brother of Edward T. Eversole, caused to be printed at the newspaper office owned and operated by the other defendant, Bell, handbills copying an article which had been that day published in a St. Louis newspaper, and distributed the handbills to some of the voters of Washington county, one of the counties composing the Twenty-first Judicial Circuit. This article, upon which appellant's suit against Bell and John Eversole is based, is as follows:

"KLEINSCHMIDT ADMITS HE LETS GAMBLERS OPERATE

"Henry Weber, Chairman of the Republican Committee,
Says They Have Repudiated Candidate; Eversole
to Win by 3800.

From St. Louis Globe-Democrat.

"Robert E. Kleinschmidt, Hillsboro attorney, president of the Bank of Hillsboro, ■ and Republican candidate for Circuit Judge of the Twenty-first Judicial District, who raised the gambling issue in his campaign against Edward Eversole, Prosecuting Attorney of Jefferson·County and Democratic candidate for the judgeship, told a

Globe-Democrat reporter yesterday he permitted the Lemay Club and the Saratoga Club, gambling casinos, to operate in Jefferson County when he was Prosecuting Attorney from 1920 to 1922.

"Although he permitted the Lemay Club, which was operated by 'No Coat' George and Tony Foley, to operate unmolested, along with the Saratoga Club, Kleinschmidt said he attempted to obtain evidence to close them, but that his term of Prosecuting Attorney expired before he was able to present the information to the Jefferson County grand jury.

## "Accuses Opponent.

"Kleinschmidt in speeches has charged that the elaborate Biltmore Club, on Gravois road, just outside St. Louis County, has been unmolested during Prosecuting Attorney Eversole's administration. Kleinschmidt also has charged Eversole with failing to co-operate with Gov. Lloyd C. Stark in his campaign to oust slot machines in the county.

"The Twenty-first Judicial District is composed of Jefferson, Iron, Washington, Wayne and Reynolds County.

"Henry Weber, chairman of the Republican County Committee, said the committee had repudiated Kleinschmidt. Weber also said the committee had warned Kleinschmidt to stay away from the gambling issue.

## "Hot Campaign.

"Kleinschmidt's gambling charges against Eversole has made the campaign the hottest Jefferson County has experienced in years. While losing Republican support, Kleinschmidt, according to a survey made in Jefferson County, has cut into Eversole's Democratic strength. The county probably will have a Democratic majority of 1600, but Eversole probably will run about 400 behind his ticket.

"Kleinschmidt's raising of the gambling issue has failed to arouse church people. Father E. A. Rogers of DeSoto declared as far as he knew conditions in Jefferson County were about the same as they have been in the last 12 years in which he has lived in the county. Gambling, he said, always has been prevalent in the county, and 'that gambling is too prevalent throughout the county.'

"Political forecasters predict Eversole will carry Jefferson County by 1200 and the five counties of the district by 3800 votes.—St. Louis Globe-Democrat, Monday, November 7, 1938."

Appellant filed suit in the circuit court of Washington county. Edward T. Eversole having become the judge of that court disqualified himself and called in the judge of another circuit. On appellant's objection that he had not agreed to the calling in of another judge, the cause was transferred to Pemiscot county. On appellant's motion the cause was remanded to Washington county. Later it was transferred to Mississippi county where it was tried. Appellant opposed

the transfer of the case to Mississippi county and applied to the Supreme Court for a writ of prohibition, which was denied.

The amended answers upon which the case was tried admitted the reprinting and distribution of the article and pleaded privilege and justification, in that the article was true in substance.

Appellant testified in his own behalf. He said the reporter talked to him about gambling conditions during his term of office; that he knew about gambling at the Saratoga club; that he tried to get evidence, had the place raided in August, 1922, and prosecuted some of the frequenters; he talked with the reporter about the Saratoga club; he thinks the Lemay club was started later. His testimony indicates he was not certain about the name or whether there was one club or two. He said the word "permit" was not used in his talk with the reporter; denied that the Republican committee had repudiated him and testified to a decrease in his law practice after the publication of the article. He also told of prosecutions conducted by him for different crimes.

Appellant offered evidence that his reputation, generally and as an efficient prosecutor, was good, and that the publication had damaged him by causing a decrease in his law practice.

Respondents offered evidence tending to prove the existence of gambling at a place called the Lemay club and at many other places in Jefferson county while appellant was prosecuting attorney. Some of the witnesses testified to participating in or witnessing such gambling; many others testified that gambling was widespread and generally known by the public. Respondents offered as a witness the reporter who wrote the article complained of. In substance, he said: that he talked with appellant about the gambling issue he had raised and the charges he had made against his opponent; also about the existence of gambling in Jefferson county during appellant's term as prosecuting attorney; that appellant told him that he knew that one gambling club, the Saratoga, was operating during 1921 and 1922; that in the last part of 1922 he got evidence against it, but his term of office expired before he could present the evidence to a jury; that they talked about the Saratoga club, but really meant the Lemay club, the Saratoga club not being started until after appellant's term of office; that the word "permit" was not used in the conversation, but witness used the word in writing the article in the sense that appellant knew of the gambling during 1921 and 1922, but didn't get evidence until the last part of 1922, too late to use it during his term. He also said that Henry Weber, Chairman of the Republican committee, told him the committee had repudiated appellant and warned him to stay away from the gambling issue. On cross-examination by appellant this witness said that certain portions of the article were untrue, that it was not published in the St. Louis news-

paper exactly as he wrote it and that he had so stated after it was published.

Appellant's brief contains assignments of error numbered from one to twenty-seven, substantially reiterated in the same number of "points and authorities." They are mainly of a general nature, unnecessarily verbose, and many of them contain no reference to the page of the record showing the alleged errors complained of. This has imposed an undue burden on the court to search out and ascertain just what appellant contends.

Appellant first complains that the court erred in sending the case to Mississippi county, his argument being that the place of trial was inconvenient to the parties. He cites Section 1062, Revised Statutes Missouri 1939 [Mo. R. S. A. 1062] and the cases of Irons v. American Express Co., 318 Mo. 318, 300 S. W. 283, and State ex rel. v. Higbee, 328 Mo. 1066, 43 S. W. (2d) 825. Section 1062 requires the cause to be sent "to some county in the same, adjoining or next adjoining circuit, convenient to the parties," etc. Mississippi county is in the Twenty-eighth judicial circuit which is in the next adjoining circuit to the Twenty-first. Since the judge disqualified himself he could not have sent the case to another county in his own circuit and there is nothing in the record to show an abuse of discretion in sending it to Mississippi county. Irons v. American Express Co., supra, is squarely in point and squarely against the contention of appellant. The other case cited does not decide the question.

Appellant complains that the court erred in refusing to strike from the answers the allegation that the article was true "in substance and effect," and to the same language in respondents' instructions. He also complains of the giving of instructions F-1 and G-1 for respondents on the ground that they assume that the article complained of was an exact re-publication of the article previously published in the Globe-Democrat and that this is untrue because the headlines are different. He also contends that respondents' evidence was insufficient to sustain the plea of justification and that the court erred in refusing appellant's instruction 5 and modifying his instruction 8. These last two instructions would have told the jury, in substance, that respondents, to prove their plea of justification, must prove that the article was an exact reprint of the Globe-Democrat article, even as to headlines; that it was not a question of gambling while appellant was prosecuting attorney, but whether appellant told the reporter that he permitted the Lemay and Saratoga clubs to operate unmolested, and that the Republican committee had repudiated him and warned him to stay away from the gambling issue.

All the contentions mentioned in the preceding paragraph are based upon the erroneous idea that respondents were compelled to prove the truth of the article in every detail, inoffensive as well as offensive portions. Such is not the law. [McClung v. Pub. Co., 279 Mo. 370,

214 S. W. 193; State ex rel. v. Cox, 318 Mo. 112, 298 S. W. 837; Davis v. Mo. Pub. Assn., 323 Mo. 695, 19 S. W. (2d) 650.] Of course, false and libelous headlines to an otherwise inoffensive publication may furnish the basis for an action for libel, but there is nothing in the headlines of the article in evidence here which is not contained in the body of the article.

Complaint is made of the introduction in evidence by respondents of an article published by a St. Louis paper while appellant was prosecuting attorney. It was admitted for the purpose of showing general knowledge of gambling conditions. Appellant is in no position to complain, for, in his petition, and for the purpose of showing general knowledge of gambling during his opponent's term as prosecutor, he alleged the publication of a similar article in another St. Louis paper. In his testimony appellant said his charges against his opponent were based upon a newspaper article. Besides, when the article was offered by respondents, appellant did not object on the ground of hearsay, but that it was not defensive. Appellant then said: "I don't deny anything in there."

Appellant complains of the court's refusal to permit a witness, who was only ten years old when appellant was prosecuting attorney, to testify to appellant's reputation as a prosecutor, and to the court's refusal to permit a lay witness, who had not qualified, to testify as to appellant's loss of law practice. The ruling was within the court's discretion in each instance. Several other witnesses, including one of the defendants, testified that appellant's general reputation was good at the time of the trial.

Other assignments refer to the court's refusal to admit in evidence a portion of an editorial published in respondent Bell's newspaper on November 3, 1938. A portion of the editorial had been torn off. The part which appellant offered is in the record. It refers to the campaign, praises appellant's opponent and denounces the character of campaign being made against him and calls upon appellant to make the fight on his own record. We cannot see how it is relevant to any issue in the case. [McClung v. Pub. Co., 279 Mo. 370, 214 S. W. 193, l. c. 202.]

Other assignments relate to evidence offered by respondents to show the existence and extent of gambling during appellant's tenure as prosecuting attorney. Some of this evidence was as to general knowledge of the public as to gambling conditions and some of it as to specific instances. Appellant objected to this on the ground that it was not shown that he had knowledge of gambling and that some of the evidence related to gambling elsewhere than at the Saratoga and Lemay clubs. Appellant also objected to, as hearsay, certain conversations between others when appellant was not present. We think appellant misconstrues the article published by repsondents. The sting of that article, read as a whole, is the charge that widespread

gambling existed during appellant's tenure in office and that he did nothing about it, at least until near the end of his term. The issue was not confined to gambling at the Saratoga and Lemay clubs. Appellant's position is, that no matter how widespread and notorious the evidence showed gambling to be, respondents could not justify without proving that gambling was conducted at both of two certain clubs named "Saratoga" and "Lemay," respectively, and that appellant had actual knowledge of such gambling. His contention answers itself; under the issues in this case, proof of specific instances and of general knowledge of gambling was properly admissible and it was for the jury to say whether the proof was sufficient to impute knowledge of gambling to appellant. As to the conversations complained of, they tended to prove the widespread existence, and general notoriety of gambling and some of this evidence was brought out by appellant's counsel on cross-examination. Many cases could be cited against appellant's contention. The following are sufficient: State ex inf. v. Wymore, 345 Mo. 169, 132 S. W. (2d) 979; Stephenson v. Kilpatrick, 166 Mo. 262, 65 S. W. 773; Kleinschmidt v. Johnson et al., 183 S. W. (2d) 82, decided contemporaneously herewith.

As to assignment number 10 the court's ruling was in defendant's favor.

Other assignments relate to the testimony of the reporter who wrote the article which was copied by respondents from the St. Louis newspaper. On cross-examination by appellant this witness said that certain portions of the article were untrue; that it was not published exactly as he wrote it and that he had so stated after it was published. Then appellant offered a written statement made by the witness in compromising a suit against him by appellant growing out of the publication of the same article. This statement said the article was untrue and contained other matters which were mere conclusions. We do not think the court erred in excluding the statement. Part of it was clearly inadmissible and none of it tended to contradict anything to which the witness had testified. He had already testified that the article was not entirely true and that he had so stated.

Assignment 19 relates to the refusal of the court to permit appellant to introduce in evidence articles published in other newspapers a few days before and the day after the election in 1938. Only one of these is shown in the record. It is critical of appellant's opponent, but does not refer in any way to appellant's official record and is not relevant to any issue in the case on trial.

Assignment 21 objects to instruction B-2 given for respondents which, among other things, told the jury you "cannot allow any damages sustained by plaintiff on account of any derogatory reports or publications put in circulation or published by any one other than defendants."

We do not think this instruction tended to mislead the jury, especially as the court gave another instruction which, in part, stated: "The law does not permit a person to libel another merely because some one else may have done so. Therefore, it is no defense in this case, if you find that the article as published by the defendants was false and libelous, as to any portion thereof, that the St. Louis Globe-Democrat may have published the same or a similar article some time previously."

Appellant's last assignment complains that the court erred in permitting counsel for respondent to read from two dictionaries in discussing the definition of the word "permit," the dictionaries not having been offered in evidence. No part of the argument appears in the record and we are not informed as to what was read nor as to the context of the argument. No claim is made that the dictionaries were not standard works or that they were incorrectly quoted. We do not approve the reading of extraneous matter to a jury, even in a libel case where the jury is the judge of both the law and the facts, but on the record here we cannot convict the trial court of error.

We have examined the cases cited by the parties, but deem it unnecessary to review them in detail. The principles of law applicable to the facts of this case are. not difficult to determine. Appellant was a candidate for circuit judge and had previously been prosecuting attorney. By becoming a candidate he offered his character and fitness for office to the public view. Any discussion of his qualifications, especially his previous record in office, was qualifiedly privileged in the absence of false statement and malice. [State ex rel. v. Cox, 318 Mo. 112, 298 S. W. 837.] Appellant cannot dispute the correctness of this principle of law for the same ·is substantially stated in instruction number 4 given to the jury at his request.

The article complained of must be construed as a whole and given the plain natural meaning which would ordinarily be accepted by the average person for whom it was intended. [Diener v. Pub. Co., 230 Mo. 613, 132 S. W. 1143; Aldridge v. Zorn (Mo. App.), 287 S. W. 650; State ex rel. v. Cox, 318 Mo. 112, 298 S. W. 837; Davis v. Pub. Co., 323 Mo. 695, 19 S. W. (2d) 650; Warren v. Pub. Co., 336 Mo. 184, 78 S. W. (2d) 404.]

It was the province of the jury to interpret the article. [Warren v. Pub. Co., supra.] We think they could well have construed it to simply charge appellant with neglecting to suppress widespread gambling during his term of office. Certainly the article should not be given the strained construction contended for by appellant. His position seems to be that respondents were required to prove that gambling was carried on at the two named clubs and that he admitted that he permitted such gambling; also that the Republican committee repudiated his candidacy. He seems to construe the term "permit" to mean an express consent and not consent to be inferred from his

inaction. But whatever reasonable construction is placed on the article there was evidence which, if believed by the jury as it apparently was, authorized the verdict for respondents. There was evidence that a gambling club known either as the Saratoga or the Lemay was in operation and gambling was conducted in many other places during appellant's tenure in office. There was evidence that appellant told the reporter that he knew of gambling during 1921 and failed to get evidence until late in 1922. Also, if important, the reporter testified that the chairman of the Republican committee told him the committee had repudiated appellant and warned him against the gambling issue. Some of this evidence was contradicted, but the decision was for the jury.

We find no error and the judgment is affirmed. All concur.