**STATE of Missouri, Respondent.**

v.

**James William STIDHAM, Appellant.**

**No. 45537.**

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1957.

Mark M. Hennelly, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Winston Cook, Sp. Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

James William Stidham appeals from a sentence of life imprisonment for the first degree murder of Walter Lee Donnell during the riot at the Missouri Penitentiary on the evening of September 22, 1954, in Cole County, Missouri. § 559.010. (Statutory references are to RSMo 1949 and V.A.M.S.) The indictment charged defendant,

William R. Hoover, Jackie Lee Noble, Paul Edward Kenton, Rollie Laster, Don Wm. DeLapp and Joseph M. Vidauri with the commission of the offense. All were inmates of the penitentiary. Defendant's case, upon his application for change of venue, was tried in the Circuit Court of Butler County, Missouri, in July, 1955. Defendant was well represented by counsel. He has filed no brief. His motion for new trial presents many issues.

The defense was an alibi; but certain issues call for some detail of the facts.

▇ I. There is no merit in defendant's contention that his written confession was coerced and involuntary and was admitted in evidence before the State established that it had been voluntarily given. The court conducted a full preliminary hearing on the issue, found the issue was for the jury, and later, after hearing the evidence before the jury, submitted the issue to the jury for determination. The testimony was to like effect at each hearing. Two members of the State Highway Patrol and four members of the St. Louis Metropolitan Police force, present at the time defendant claimed physical violence occurred, testified that no promises had been given, or physical violence, duress, threats or abuse was offered to defendant, categorically denying defendant's testimony. On the conflicting showing the issue of the voluntariness of the confession was for the jury. State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88, 93 [3, 4]; State v. Laster, Mo., 293 S.W.2d 300, 303 [1, 2]; State v. Sanford, 354 Mo. 998, 1006 [4], 193 S.W.2d 31, 37, 38 [2]; State v. Menz, 341 Mo. 74, 106 S.W.2d 440, 448 [12].

Defendant stated, among other things, in his confession, written in his own hand, that several prisoners broke into death row and Paul Kenton unlocked his cell door. He and several other prisoners then went to Creighton's cell to attack him but he had his lock blocked and they could not enter. They then entered Donnell's cell, and, quoting: "Kenton held Donnell while Laster stabbed him several times with an ice pick, at the same time I slashed at him three or four times around the face and neck with a knife that Kenton gave me when he opened the door. When Donnell fell to the floor Linder and Thompson each said get Donnell with the sledge and they proceeded to hit him with a sledge hammer and a crowbar." Defendant also orally stated that he did not like Donnell because Donnell had snitched in regard to a riot in July and caused defendant to be punished; that Donnell had snitched on some of the boys and they had received a lot of time; and that he was living his life under a different code than the officers.

The jury could find, aside from defendant's confession, the following outlined facts from the evidence.

The homicide occurred in what is known as "death row." Death row, consisting of thirty-two cells, was located in the basement of "B" Hall. Three heavy steel gates or doors separated death row proper from other parts of the building. B Hall proper, above death row, housed a cell block.

The riot started about 6:30 p. m. September 22, 1954. Nine inmates, for various reasons, were confined in death row that evening. Defendant, who was known as "Slick," and his co-indictee Laster occupied adjoining cells, having been transferred to death row about July, 1954. Donnell, the deceased, and James M. Creighton also occupied adjoining cells in death row, some distance from defendant and Laster.

From the date defendant was placed in death row he would "holler down" and curse and ridicule Donnell, threatened to kill Donnell if he ever got to him, said that "when they come in here and get us out, we are going down there and kill" Donnell and Creighton; and that they should have killed Donnell over in E Hall when they broke out over there.

Clarence Dietzel was on guard duty in death row the night of the riot. He notic-

ed the disturbance and started closing the windows to death row. Defendant and Laster demanded that the windows opposite their cells be left open.

About 7:00 or 7:30 p. m. some of the rioters tried to break into B Basement. While the prisoners were trying to break into death row, defendant and Laster "hollered" that they would be down to kill Donnell and Creighton as soon as they got out of their cells. Defendant said he was going to kill Donnell because Donnell took the stand against one Thompson and some others.

DeLapp, known as Curley, Kenton, Noble, Hoover, and Vidauri, were among the number trying to break in. They worked on the first door with a sledge hammer, crowbars, pick and other small tools. DeLapp called to defendant, saying: "Slick, this is Curley DeLapp. We will be in to get you out if it takes, costs us hell and high water." "We are coming down to get you out. We are going to get you out." Defendant answered: "Hurry up, Goddamn it, I am waiting for you." DeLapp sent Hoover and Kenton out to burn the buildings. They returned. Vidauri guarded a paint bucket containing knives, having 5 or 6 inch blades, used in the twine plant. After working on the door for a while, DeLapp called to defendant that they could not make it and were going to try something else. Defendant told DeLapp to come around to the south windows and said he might make it there. DeLapp, Noble, Hoover and Kenton went out and tried to make an entrance through the wall into death row with the sledge hammer. Defendant and Laster talked to DeLapp through the open windows and had him go back and work on the door. They again started to work on the door and DeLapp called to defendant saying: "We are going to try again." Then, in a short time someone produced a key and the men came into B Basement proper. DeLapp and also Kenton demanded Dietzel's keys, threatening to kill him if he refused to hand them over. Dietzel in-

sisted he did not have the keys and did not give the keys to them. DeLapp with the help of others, then broke the lock on the second door with a sledge hammer. De-Lapp, Noble, Kenton and Hoover immediately entered to where guard Dietzel was. They placed Dietzel on a small table and searched him for the keys, Kenton pulling the lining completely out of his coat. De-Lapp ordered Dietzel to call the warden's office and immediately took the telephone from him. About this time the door to death row proper opened. Noble and Kenton placed Dietzel in one of the death row cells, where he remained for about twenty minutes, and was then taken up the steps and placed in the mop room in B Hall.

DeLapp, Noble, Kenton, Hoover, Vidauri and one Miller finally released defendant and Laster, as well as other prisoners who desired to be released from their cells in death row. DeLapp led them up the aisle and said to the onlookers: "Get back men, they are coming out now"; and when they came out and stopped, DeLapp put his arm around defendant's shoulders and said: "Gentlemen, I have brought you this far, this is your leader from here on." Defendant answered: "Well men, I am ready to work." They then went into the room where Vidauri was guarding the knives and returned to death row armed with weapons. Defendant told Vidauri to go ahead but Vidauri answered, "No, I am going with you. I am all the way with you guys." They then went back into death row. DeLapp had the other inmates go upstairs in B Hall.

Defendant, Laster, Hoover, DeLapp, Kenton, Noble and Vidauri tried to break into Creighton's cell. They had a sledge hammer, a pole and other weapons. Creighton had jammed his lock with concrete and a comb. Defendant said he was going to settle the score with Donnell and Creighton. They broke Creighton's jaw in two places, using a pole. He got the pole away from them, and started using it on them. Defendant told Donnell they

would be over to get him next. They could not get Creighton's cell door open and started working on Donnell's door. Creighton heard Donnell's door go back and saw the seven men walk up to go into Donnell's cell. He could not see through the cell walls. He heard Donnell hollering: "I ain't no rat, I ain't no snitch. And I ain't never harmed you boys," and he was begging them. Pretty soon Donnell was going Oh, oh, and he hollered real loud and got to kind of gurgling. The men then ran out of Donnell's cell and up the aisle. They went to a wash basin and each washed his hands. Defendant and Noble took off their undershirts and discarded them.

Donnell received a multiplicity of wounds. He had five stab wounds in the front and four stab wounds in the back on the left side in the region of the heart and lungs. Two of the front wounds passed completely through his heart and two of the back wounds penetrated his heart. His skull had sustained an egg shell type fracture, three or four inches in area, a multiple crushing type fracture of many small fragments, which could have been made by a bloody, 16-pound sledge hammer found alongside his body about 10:30 p. m. that day by an officer. He had other wounds on his body.

■ II. Defendant contends error resulted from the court's failure to instruct on murder in the second degree and manslaughter. The defense was an alibi. The only submissible issue of guilt under the evidence was murder in the first degree. State v. Taylor, 347 Mo. 607, 148 S.W.2d 802, 805 [5]; State v. Clymer, Mo., 159 S.W.2d 808, 812 [9]; State v. Barbata, 336 Mo. 362, 80 S.W.2d 865, 868 [1, 2]. See State v. Laster, Mo., 293 S.W.2d 300, 302, and § 559.010. It also follows that error was not committed in overruling defendant's motions for judgment of acquittal and judgment of acquittal as to murder in the first degree.

■ III. Defendant's contentions that State's Exhibits No. 1 and No. 9 should not have been received in evidence because hearsay, not properly identified and because such action violated his constitutional rights are without merit. The testimony established that Exhibit 1 was a diagram of the floor plan of B Basement, showed the location of the cells, steel gates, et cetera, was drawn to scale, and it was identified by the person making it and others. State's Exhibit 1 was admissible. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 107 [26]; State v. McHarness, Mo., 255 S.W.2d 826, 829 [6]. Exhibit 9 was a bloody 16-pound sledge hammer found at the side of Donnell's body by W. S. Barton of the State Highway Patrol about 10:30 p. m. the night of the riot. It was also identified by a number of other witnesses. Defendant's confession refers to the use of a sledge hammer in the killing of Donnell. There was no error in the admission of Exhibit 9. State v. Hopkins, 278 Mo. 388, 213 S.W. 126, 128 [5]; State v. Wilson, 223 Mo. 173, 189, 122 S.W. 671, 676 [5].

■ IV. During the examination of Officer Eitzman of St. Louis, who was present at the time defendant gave his written confession, the officer stated he talked to defendant "and explained to him that I had a statement * * *." Defendant's objection to the remark was sustained and the witness was instructed not to testify to any statements made by other prisoners and conveyed to defendant by the witness. Notwithstanding the court's ruling, defendant's motion for new trial asserts the court could not cure the alleged error. A more questionable situation arose under similar circumstances in State v. Vidauri, Mo., 293 S.W.2d 955, 956 [2,3], and was ruled against defendant's contention. See State v. Montgomery, Mo., 223 S.W.2d 463, 466 [11, 12]. The point is ruled against defendant.

■ V. Defendant claims error in the exclusion of his Exhibits B, C, C-1, and D. Exhibit B was never offered in evidence.

Defendant objected to James M. Creighton being sworn as a witness on the ground he was of unsound mind and incompetent. The jury was excused and a voir dire hearing was conducted at which Mrs. Alma Miller, the Medical Records Clerk of State Hospital No. 1, at Fulton, and Creighton were examined. Mrs. Miller produced a file of a number of pages marked defendant's Exhibit B for identification, and out of the file defendant offered and the court accepted in evidence at the voir dire examination two typewritten sheets marked defendant's Exhibits C and C-1; and another typewritten sheet marked defendant's Exhibit D.

Creighton testified on voir dire that he had been in "solitary" for about eighteen months and "played crazy," put on a good act, to get out of solitary and be sent to the State Hospital and after thirty-five days was returned to the Penitentiary; that he had never been before a Probate Court and committed as an insane person; and that he had been in a mental institution only that one time. The court found that Creighton was a competent witness.

Later, upon Creighton's cross-examination before the jury defendant developed that Creighton had put on a pretty good act and had been transferred to the State Hospital at Fulton, where he remained five or six weeks before being retransferred to the Penitentiary, and placed in death row in May, 1954. Upon an objection being interposed to a question, counsel for defendant, out of the presence of the jury, stated he was asking the court to make Creighton's competency as a witness a jury question. The court informed counsel the jury passed on the credibility of witnesses but not their competency and counsel was entitled to examine the witness on any matters affecting his credibility. Counsel stated he would not pursue the matter further. His subsequent offer of said Exhibits C, C-1, and D in evidence before the jury was refused.

Mrs. Miller testified that Exhibits C and C-1 were attached to a Missouri Penitentiary letterhead; that she did not know who made the record or when it was made, and could not say it was a record of State Hospital No. 1; and with respect to Exhibit D she was not willing to swear it was correct because it was not signed. The showing was such as to permit of a finding that the sources of information, and method and time of preparation of the exhibits were not such as to justify their admission before the jury. § 490.680; Gray v. St. Louis-San Francisco R. Co., 363 Mo. 864, 254 S.W.2d 577, 579 [1]. In addition, it was the court's function, and not the function of the jury, to pass on the competency of the witness. § 491.060; State v. Whitsett, 232 Mo. 511, 526(IV), 134 S.W. 555, 560(4); Kleinschmidt v. Bell, 353 Mo. 516, 183 S.W.2d 87, 91 [4,5]; State v. Herring, 268 Mo. 514, 188 S.W. 169, 172 [3, 5–8]; 97 C.J.S. Witnesses § 119 f, p. 541; 2 Wigmore on Evidence 523, §§ 487, 497(c).

■■■ VI. The court sustained an objection to defendant's offer of proof at the close of the cross-examination of witness Creighton that he had access to one Mary Annis, they both being confined in the Cole County jail at the time of trial. Thereafter and prior to the calling of the next witness the court made it clear to defendant's counsel that he was at liberty to show the interest of the witness in testifying in the case and to develop any arrangement made covering any special privileges in connection with his testimony, and offered to recall the witness for further cross-examination. Defendant's motion for new trial states the court erred in not permitting him to cross-examine the witness completely with respect to his association with Mary Annis. Trial courts may exercise a sound discretion as to the extent of the examination of witnesses with respect to specific acts on collateral matters affecting their credibility and not directly connected with the issues on trial. Adriance v. Arnot, 31 Mo. 471; State v. Nasello, 325 Mo. 442, 30 S.W.2d 132, 139 [26]; State v. Brotherton, Mo., 266 S.W.2d 712, 714

[2]. Counsel did not avail himself of the court's offer to recall the witness and may not now successfully urge reversible error.

VII. Defendant makes many attacks on the State's main instruction, Instruction No. 4, which, after defining "felonious," and other terms, reads, in so far as questioned:

"Bearing in mind these definitions and those included in the other instructions, the court instructs the jury that if you believe and find from the evidence, beyond a reasonable doubt, that Rollie Laster, William R. Hoover, Paul Edward Kenton, Jackie Lee Noble, Don William DeLapp, and Joseph M. Vidauri entered into a conspiracy and agreement to act in concert and together to kill and murder Walter Lee Donnell at the time and place and in the manner and by the means hereafter set forth in this instruction, and if you believe and find from the evidence, beyond a reasonable doubt, that pursuant to such a conspiracy and agreement those aforesaid persons, acting in concert and together, on September 22, 1954, in Cole County, Missouri, wilfully, deliberately, premeditatedly, and with malice aforethought did make an assault upon Walter Lee Donnell, and then and there did wilfully, deliberately, premeditatedly, and with malice aforethought forcibly strike, hit, stab, cut, and beat Walter Lee Donnell in and upon his face, head, and body, with a sledge hammer, and a knife, and another sharp instrument or dagger, if you so find, thereby giving Walter Lee Donnell about his face, head, and body, mortal wounds from the effects of which he died on September 22, 1954, if you so find, and if you further believe and find from the evidence, and beyond a reasonable doubt, that the defendant, James William Stidham, at the time of such killing and murdering, was a member of the conspiracy and agreement aforesaid and theretofore had conspired and agreed with Rollie Laster, William R. Hoover, Paul Edward Kenton, Jackie Lee Noble, Don William DeLapp, and Joseph M. Vidauri, to aid, abet, assist or encourage them in the killing and murdering of Walter Lee Donnell at the time and place and in the manner and by the means aforesaid, and if you further believe and find from the evidence, beyond a reasonable doubt, that the defendant, James William Stidham, pursuant to such conspiracy and agreement, was actually present during the killing and murdering aforesaid of Walter Lee Donnell, and that he knew of the felonious purpose and intent of Rollie Laster, William R. Hoover, Paul Edward Kenton, Jackie Lee Noble, Don William DeLapp, and Joseph Vidauri to kill and murder Walter Lee Donnell as aforesaid, and that James William Stidham then and there knowingly and intentionally aided, abetted, assisted, or encouraged the aforesaid persons, or any of them, in the aforesaid killing and murdering, then you should find the defendant, James William Stidham, guilty of Murder in the First Degree and by your verdict so say. * * *"

■ a. The required finding of the instruction that pursuant to a conspiracy the conspirators acting in concert "then and there did wilfully, deliberately, premeditatedly, and with malice aforethought forcibly strike, hit, stab, cut, and beat Walter Lee Donnell in and upon his face, head, and body, with a sledge hammer, and a knife, and another sharp instrument or dagger, if you so find, thereby giving Walter Lee Donnell about his face, head and body, mortal wounds from the effects of which he died on September 22, 1954, if you so find," refutes defendant's assertion that the instruction did not require the jury to find that the conspirators wilfully, et cetera, killed Donnell.

■ b. The use of the words "kill and murder" and "killing and murdering" and their repetition several times in the instruction did not, as stated by defendant, constitute a comment on the evidence, or single out and give undue prominence to such words, under the facts adduced in evidence by the State and did not assume a murder had been committed. The in-

struction required the finding of the submitted facts beyond a reasonable doubt. The defense was an alibi; and there was no contention or evidence that Donnell had not been murdered.

 c. Defendant questions the use of the words "aid, abet, assist or encourage" and "aided, abetted, assisted, or encouraged" in the instruction, contending the use of the terms disjunctively rather than conjunctively erroneously authorized a conviction upon a finding that defendant did any one of the four acts. Under § 556.170 principals in the second degree in the commission of any felony or accessories to any murder or other felony before the fact "may be charged, tried, convicted and punished in the same manner, as the principal in the first degree." Consult also § 556.120 on the offense of conspiracy. Blackstone's Commentaries, Vol. 4, Ch. III, p. *34, defines a principal in the first degree as "the actor or absolute perpetrator of the crime; and in the second degree he is who is present, aiding and abetting the fact to be done"; and an accessory before the fact "to be one who, being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime." See authorities there cited; also 22 C.J.S. Criminal Law §§ 85–93, p. 152; 14 Am.Jur. 820, B, 832, C. It is stated in 22 C.J.S. Criminal Law § 88, p. 159, with respect to principals in the second degree, in the absence of statutory provisions, that "no particular acts are necessary; nor is it necessary that any physical part in the commission of the crime be taken; mere encouragement is enough." And see Id., § 93, p. 164, with respect to an accessory before the fact. McMannus v. Lee, 43 Mo. 206, 208, states: "The law is well laid down that any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances or approves the same, is in law deemed to be an aider and abettor, and liable as a principal * * *."

Approved in State v. Walker, 98 Mo. 95, 104, 110(11), 9 S.W. 646, 650, 652(11), 11 S.W. 1133, and other cases. See also State v. Messino, 325 Mo. 743, 766(V), 30 S.W.2d 750, 760(V); State v. Lawrence, Mo., 280 S.W.2d 842, 848; State v. Ruffin, Mo., 286 S.W.2d 743, 748 [10, 11]; State v. Murray, Mo., 193 S.W. 830, 832; State v. Clymer, Mo., 159 S.W.2d 808, 811 [8]; People v. Chapman, 62 Mich. 280, 284, 28 N.W. 896, 897. The submission was not erroneous.

 d. We have hereinbefore stated enough, but not all, of the evidence favorable to the State. Generally, a conspiracy is not shown by direct evidence. It is often inferred from the circumstances. State v. Parr, 296 Mo. 406, 246 S.W. 903, 906 [8]. In the instant case there was ample evidence for a finding of the conspiracy submitted and the actual participation in and consummation of the said conspiracy by the persons named in the instruction. Persons entering a conspiracy after its formation are deemed in law parties to all acts done by any one of the conspirators, before or after his entrance, in furtherance of the conspiracy. State v. Walker, 98 Mo. 95, 105, 106, 9 S.W. 646, 650; State v. Crab, 121 Mo. 554, 563, 26 S.W. 548, 550; State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, 342 [14, 15]; 15 C.J.S. Conspiracy § 75, p. 1107; 11 Am.Jur. 571, § 40.

 An instruction is to be considered as a whole and with the other instructions in the case. Instruction No. 4 is to be read with No. 5, set out infra. The Missouri cases cited to Point VII, c, sustain Instruction No. 4. It was more favorable to defendant than the law required it to be. We need not detail the other attacks against it.

VIII. Defendant's motion questions Instruction No. 5, which reads:

"The Court instructs the jury that, if you believe and find from the evidence, beyond a reasonable doubt, that the defendant,

James William Stidham, and William R. Hoover, Rollie Laster, Paul Edward Kenton, Jackie Lee Noble, Don William DeLapp and Joseph M. Vidauri entered into a conspiracy and agreement to act in concert and together to kill and murder Walter Lee Donnell at the time and place and in the manner and by the means set forth in Instruction No. 4, then the act of either of them pursuant to such conspiracy and agreement to kill and murder Walter Lee Donnell would be in law the act of each one so conspiring and agreeing.

"The word 'Conspiracy,' as used in these instructions, means a common agreement and understanding between two or more persons which is formed for the purpose of committing and doing by their joint efforts some criminal act.

"The Court instructs the jury that all persons are principals who are guilty of acting in concert and together in the commission of a crime. When a crime is actually committed by one or more persons and another person is actually present, and, knowing of the felonious purpose and intent of the person or persons committing the crime, he knowingly and intentionally aids, abets, assists or encourages the person or persons actually committing the crime in the commission of the same, then such person so knowingly and intentionally aiding, abetting, assisting or encouraging the person or persons actually committing the crime in the commission of the same is a principal and he is equally guilty with the person or persons who actually commits the crime.

"However, you are further instructed that the mere presence of a person at the time and place of the commission of a crime by another or others is not alone sufficient to justify finding him in any manner responsible for the commission of such crime. On the contrary, before such person can be found in any manner responsible for the commission of such crime, the evidence in the case must show, beyond a reasonable doubt, not only that such person was actually present at the commission of

such crime, but also that such person knew of the felonious purpose and intent on the part of the person or persons actually committing the crime, and that he then and there was knowingly and intentionally aiding, abetting, assisting or encouraging the person or persons committing the crime in the commission of the same."

■ This instruction is to be considered with the other instructions in the case. The submitted facts of the first paragraph of Instruction No. 5 were required to be found· beyond a reasonable doubt. The other paragraphs of the instruction are merely definitive, legal statements of what constitutes a conspirator and a conspiracy, assume nothing, and are not subject to successful attack on the ground they are abstract. We have hereinbefore held there was substantial evidence of the submitted conspiracy embracing all the named participants. The conspiracy was incidental to the offense charged. It is also the law that the act of one of the conspirators in the furtherance of the conspiracy is the act of the other conspirators, and § 556.170 makes principals in the second degree and accessories before the fact equally guilty with the principal in the first degree. (See instructions in State v. Cantlin, 118 Mo. 100, 107, 111(II), 23 S.W. 1091, 1093, 1095(2), considered to fairly cover the issue.) What we have hereinbefore said sufficiently answers defendant's attacks against Instruction No. 5. Instructions less favorable to a defendant have been approved. State v. Walker, supra; State v. Messino, supra; State v. Murray, supra; State v. Lawrence, supra; State v. Clymer, supra; State v. Nasello, 325 Mo. 442, 459(IV), 30 S.W.2d 132, 137(IV) (instruction 2 therein being to the same effect as instruction 2 set out in State v. Messino, supra); State v. Williams, 309 Mo. 155, 274 S.W. 427, 434(VII); State v. Dowling, 360 Mo. 746, 230 S.W.2d 691, 694 [6]; State v. Mayberry, Mo., 272 S.W.2d 236, 243 [20]:

IX. Defendant also questions Instruction No. 6, which reads:

"The Court instructs the jury that before any alleged statement can be valid, and before you can even consider it, it must have been made voluntarily, that is to say, without anyone having offered to the person who is claimed to have made such a statement any hope of leniency or reward of any kind for making such statement, and without anyone making any threat or doing any violence to the person claimed to have made any such statement in order to induce or force him to confess.

"If the jury does not believe that a statement, written or oral, and claimed to be a confession made by the defendant, was voluntarily made by him as defined above, the jury should entirely disregard such statement in arriving at your verdict.

"If, however, the jury does believe that a statement, written or oral, and claimed to be a confession made by the defendant, was voluntarily made by him as defined above, the jury must consider such statement and you should give it such weight as you believe it deserves in arriving at your verdict."

We do not agree with the contention in defendant's motion that the clause "claimed to be a confession made by the defendant" is ambiguous, misleading, incomplete and a comment on the evidence. The State's evidence was that the statements were voluntary and defendant's evidence was to the contrary. No intelligent jury would be confused. It was proper to instruct on the voluntariness of defendant's statement. State v. Cunningkin, Mo., 261 S.W.2d 85, 87.

Defendant contends in his motion the use of the word "must" in the third paragraph of Instruction No. 6 gives judicial direction to the jury, invades the province of the jury and is a comment on the evidence. The instruction is a cautionary instruction on a collateral issue, does not direct a verdict, and is not on an issue the court is required to instruct upon as part of the law of the case under Sup.Ct. Rule 26.02, 42 V.A.M.S. § 546.070(4); State v. Cunningkin, Mo., supra; State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88, 94, 95; State v. Francies, Mo., 295 S.W.2d 8, 15 [24, 25]. Trial juries "shall be sworn well and truly to try the case." Sup.Ct.R. 26.02. See §§ 546.070, 546.220; State v. Duff, 253 Mo. 415, 424(IV), 161 S.W. 683, 685(IV). The oath administered to trial jurors embraces the obligation to try the case according to the evidence. Consult 50 C.J.S. Juries § 296, p. 1088; 2 Hale, Pleas of the Crown, 293. The instruction made it plain that before the jury could "even consider" defendant's statement, the jury should find "it must have been made voluntarily," and if the jury did not so find, the jury "should entirely disregard" it in reaching the verdict. An instruction substantially identical to the instant instruction was given in State v. Laster, Mo., 293 S.W.2d 300, 304, a companion case, and we stated, no issue being presented, "an adequate instruction was given on this subject." In State v. Stibbens, 188 Mo. 387, 396(III), 87 S.W. 460, 462(3), an instruction told the jury "you should take such confession into consideration" if voluntarily made. See State v. Pillow, Mo., 169 S.W.2d 414, 416; State v. Hostetter, Mo., 222 S.W. 750, 753(II); State v. Hartman, Mo., 272 S.W.2d 276 [1, 2]. We are not approving the use of the word "must" in the instruction. A more appropriate word would be "may." However, the jury, if it found defendant voluntarily made the statement, would, unless it violated its oath, consider the statement. The questioned clause was modified by the succeeding clause; and under the instruction, if the statement was made voluntarily, the jury was not told how to consider the statement and was free to give the statement no weight whatever in arriving at the verdict. It stated the duty the law placed upon the jury. We conclude on the record before us that the jury was not misled and reversible error did not occur. Consult State

**18**

v. Harris, 357 Mo. 1119, 212 S.W.2d 426, 428 [7, 8].

■ X. Defendant complains of the court's overruling of his motion for a polygraph examination of himself, which he offered to pay for. We see no necessity for requesting a court to rule on a motion of this nature. The authorities are to the effect that the results of lie detector examinations are inadmissible in evidence. 23 C.J.S. Criminal Law § 967, p. 295; 20 Am. Jur. 633, § 762; Henderson v. State of Oklahoma, 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R.2d 1292, 1306 (annotation). See State v. Cole, 345 Mo. 181, 188 S.W.2d 43, 51 [12]; State v. Hudson, Mo., 289 S.W. 920 [2].

■ XI. Defendant contends in his motion that the court erred in not sustaining his objection to the prosecuting attorney's statement in argument that defendant failed to go back on the stand and rebut certain testimony adduced by the State in rebuttal to testimony given by defendant while on the stand. The statutory right of an accused to no reference to his failure to testify (Sup.Ct.R. 26.08; § 546.270) may be waived by him. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 587 [8]. It is made clear in State v. Larkin, 250 Mo. 218, 234 (III), 157 S.W. 600, 604 [4], 46 L.R.A., N.S., 13, that when an accused takes the stand in his defense, as in the instant case, his failure to testify on specific facts involved in the case is a legitimate subject for comment by the state in argument. State v. Pierson, 343 Mo. 841, 123 S.W.2d 149, 157 [14]; State v. Smith, Mo., 252 S.W. 662, 667 [14]. Having taken the stand, defendant's failure to deny incriminating facts was open to comment whether the denial should have occurred on an appearance in chief or an appearance in sur-rebuttal.

The transcript discloses that all matters for consideration here upon the record (Sup.Ct.R. 28.02, 28.08) are in proper form and sufficient.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

EAGER, P, J., and STORCKMAN, J., and BROADDUS, S. J., concur.

LEEDY, J., not sitting.